**YEN PILCH ROBAINA & KRESIN PLC**
6017 N. 15th Street
Phoenix, Arizona 85014
Telephone: (602) 682-6450
Ty D. Frankel (027179)
TDF@yprklaw.com

**YEN PILCH ROBAINA & KRESIN PLC**
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
Telephone: (619) 756-7748
Patricia N. Syverson (020191)
PNS@yprklaw.com

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Christie Lloyd, on behalf of herself and all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Rise Services Inc. dba Rise Inc., an Arizona corporation; and Rise Services Inc., a Utah corporation,<br><br>Defendants. | Case No.<br><br>**COLLECTIVE ACTION AND CLASS ACTION COMPLAINT**<br><br>**[Jury Trial Demanded]** |

Plaintiff Christie Lloyd ("Plaintiff"), on behalf of herself and all others similarly situated, brings this action against Defendant Rise Services Inc. dba Rise Inc., an Arizona corporation, and Defendant Rise Services Inc., a Utah corporation (both entities collectively referred to as "Rise Services" or "Defendant") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, Arizona wage laws, A.R.S. § 23-350, *et seq.* ("Arizona Wage Statute"), and A.R.S. 23-363 *et seq.* ("Arizona Minimum Wage Statute").

- 1 -

**NATURE OF THE ACTION**

1.      Plaintiff alleges on behalf of herself and all other similarly situated Coordinators of Defendant who elect to opt in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Collective Action Members") that they are entitled to unpaid wages including unpaid minimum wage and overtime for all hours worked exceeding forty (40) in a workweek, liquidated damages, and attorneys' fees and costs, pursuant to the FLSA, 29 U.S.C. §§ 201, *et seq*., specifically 29 U.S.C. §§ 206, 207, 216(b).

2.      Plaintiff further alleges, pursuant to Fed. R. Civ. P. 23, on behalf of herself and a class of other similarly situated Coordinators employed by Defendant within the State of Arizona (the "Arizona Class Members"), that they are entitled to timely payment of all wages due, plus interest, treble damages, and penalties as allowed by the Arizona Wage Statute, A.R.S. § 23-350, *et seq*., and that they are entitled to payment of the minimum wage, plus interest, statutory damages, and penalties as allowed by the Arizona Minimum Wage Statute, A.R.S. § 23-362, *et seq.*

**JURISDICTION AND VENUE**

3.      The FLSA authorizes civil actions by private parties to recover damages for violations of the FLSA's wage and hour provisions.  This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they arise from the same case and controversy as the FLSA claim.  The state and federal claims derive from a common nucleus of operative fact, the state law claims will not substantially dominate over the FLSA claims, and exercising supplemental jurisdiction would be in the interests of judicial economy, convenience, fairness, and comity.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because substantial decisions and events giving rise to the claims occurred in the State of Arizona within this District.

6.     The United States District Court for the District of Arizona has personal jurisdiction because Defendant conducts business within this District and the actions giving rise to this Complaint occurred in this District.

7.     At all relevant times, Defendant has been an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

8.     Plaintiff and the other similarly situated Coordinators are employees as defined in 29 U.S.C. § 203(e)(1), A.R.S. § 23-362(A), and A.R.S. § 23-350(2) and are non-exempt employees under 29 U.S.C. § 213(a)(1).

9.     At all relevant times, Defendant was an employer as defined by 29 U.S.C. § 203(d), A.R.S. § 23-362(B), and A.R.S. § 23-350(3) and a "person" under 29 U.S.C. § 213(a)(1).

10.     At all relevant times, Defendant employed Coordinators to oversee and support programs offered at Defendant's facilities, including assisting Direct Support Professionals in offering caregiving services to individuals with disabilities in Arizona, including Plaintiff Christie Lloyd and those persons similarly situated to Plaintiff who are members of the putative collective action and class action classes (collectively referred to as "Coordinators").

11.     At all relevant times, Plaintiff and the other members of the putative classes were engaged in commerce and/or worked for Defendant in an enterprise engaged in commerce.

12.     At all relevant times, Defendant has been engaged in interstate commerce and has been an enterprise whose gross annual volume of sales made or business done is greater than $500,000.

## **PARTIES**

13.     Defendant Rise Services Inc. dba Rise Inc. is an Arizona corporation with its headquarters and principal place of business located at 4554 E. Inverness Avenue, Mesa, Arizona 85206.

14.     Defendant Rise Services Inc. is a Utah Corporation with its headquarters and principal place of business located at 1358 W. Business Park Drive, Orem, Utah 84058.

15.     Defendant Rise Services Inc. dba Rise Inc., the Arizona corporation, and Defendant Rise Services Inc., the Utah corporation, exercise their authority to control the day-to-day operations of the business where Plaintiff and the Coordinators work, including matters related to setting and paying compensation to the Coordinators, such that they are liable to Plaintiff and the Coordinators as an employer.

16.     Rise Services was founded in 1987 and provides caregiving services for children, adults, and families throughout Arizona, as well as other states including Utah, Oregon, Texas, and Idaho.

17.     Through its Coordinators like Plaintiff, Rise Services provides programs and services for people with disabilities including providing caregiving in residential settings and day programs and providing employment assistance, management care, and hourly supports.

18.     Plaintiff Lloyd was, at all relevant times, an individual residing in the Phoenix, Arizona metropolitan area.

19.     At all relevant times, Plaintiff Lloyd was employed by Rise Services in Arizona as a Coordinator, an hourly, non-exempt position.  Plaintiff Lloyd's Consent to Opt-In to Lawsuit pursuant to 29 U.S.C. § 216(b) is attached hereto as **Exhibit 1**.

**STATEMENT OF FACTS**

20.     Defendant Rise Services is an "employer" within the meaning of the FLSA, the Arizona Minimum Wage Statute, and the Arizona Wage Statute.

21.     Defendant operates numerous caregiving facilities throughout Arizona, hiring Coordinators like Plaintiff to oversee the programs and caregiving services, including overseeing the Direct Support Professionals responsible for providing caregiving services, at numerous locations throughout the State of Arizona including Chinle, Kingman, Lake Havasu City, Mesa, Queen Creek, Sierra Vista, Surprise, Tucson, and Yuma.

22.     Plaintiff was employed by Rise Services as a Coordinator from 2009 until approximately August 15, 2020.  She worked for Defendant at its caregiving facility in the Phoenix metropolitan area.

23.     During her typical week, Plaintiff was scheduled to work Monday through Friday from 8am to 5pm.

24.     However, due to the nature of her work and additional staffing needs from Rise Services, Plaintiff was often required to work before and after her regularly scheduled shifts.

25.     Defendant failed to pay Plaintiff all the wages she was due for the hours she worked, including regular wages, minimum wage, and overtime wages.

**I.     Rise Services Was Obligated To Pay Plaintiff And The Coordinators Certain Compensation For Their Work Performed**

26.     From January 1, 2020, Plaintiff was employed as a non-exempt Coordinator and was paid an hourly rate.  Plaintiff's hourly pay rate during the relevant period ranged from $14.91 per hour to $15.00 per hour.  During her most recent pay periods, she was paid an hourly rate of $15.00 per hour.  Prior to January 1, 2020, Plaintiff was similarly employed as a Coordinator on a salaried basis yet performing the same non-exempt duties, including overseeing the Rise facilities and programs offered to the members, overseeing the Direct Support Professionals in the facilities and driving members to and from the facility.

27.     In addition to her regular hourly rates, Plaintiff was supposed to receive an additional $3.00 per hour as an essential employee during the COVID-19 pandemic as hazard pay.

28.     In addition to her regular hourly rates, Plaintiff was also supposed to be compensated for hazard pay at a hazard pay rate of time and a half her regular rate of pay when she entered a facility where an individual receiving caregiving services tested positive for COVID-19.

29.     Plaintiff was also supposed to be paid a holiday rate of time and a half her regular rate of pay when she worked on a holiday.  For example, when she worked a holiday

during the time period in which she was paid a regular hourly rate of $14.91, she was to be paid $22.37 per hour for work performed on holidays.

30.    Defendant also required Coordinators to complete mandatory training. For Plaintiff and other similarly situated Coordinators, the required training about safety practices associated with their work as caregivers was integral and indispensable to their jobs as Coordinators and required by Defendant.

31.    Defendant promised to pay the Coordinators for time spent training. Management also promised Plaintiff and the Coordinators that they would be paid for training during the course of their employment, including in communications made to the Coordinators during their employment.

## II.    Rise Services Routinely And Consistently Failed To Pay The Coordinators Like Plaintiff All The Compensation They Were Due

### A.    Unpaid Hazard Pay

32.    Plaintiff and the Coordinators were promised hazard pay as an essential employee during the COVID-19 pandemic at a rate of an additional $3.00 per hour.

33.    Plaintiff and the Coordinators did not receive a pay increase for hazard pay as essential employees. For example, although Plaintiff continued to work from the start of the pandemic until August 2020 and should have received the hazard pay hourly rate increase, the only rate increase Plaintiff received in 2020 was that in March 2020 her regular hourly rate went from $14.91 to $15.00 an hour.

34.    In addition, Plaintiff and the Coordinators were supposed to be compensated for hazard pay when they went into a facility where an individual receiving caregiving services tested positive for COVID-19 at a hazard pay rate of time and a half their regular rate of pay.

35.    However, Rise Services routinely and consistently failed to pay the Coordinators like Plaintiff the hazard pay they were due.

36.    For example, Plaintiff received her paycheck on May 22, 2020 for the period of May 1, 2020 to May 15, 2020, which includes the period in which she was due hazard

pay. However, there is no hazard pay reflected on her check – either an hourly rate increase or a time and a half of her regular rate of pay. Rather, Plaintiff was compensated only for 88 hours of regular time at her regular rate of pay of $15.00 per hour.

37. Rise Services failed to pay Plaintiff for any hazard pay she had earned from working with individuals who had tested positive for COVID-19.

**B.** ***Unpaid Training Pay***

38. The Coordinators like Plaintiff were told that they must complete the mandatory training, and if they failed to do so, Rise Services communicated that they would withhold their pay or terminate their employment.

39. As a result, Plaintiff and the Coordinators routinely completed periodic training to comply with Defendant's training requirements, but Defendant failed to pay them for this time.

40. The unpaid training time that Defendant required Plaintiff and other similarly situated Coordinators to work off the clock routinely caused Plaintiff and other similarly situated Coordinators not to be paid all the wages they were due.

**C.** ***Unpaid Minimum Wage***

41. Employees like Plaintiff and the Coordinators in Arizona must be paid the minimum wage, which in 2019 was $11 per hour, in 2020 was $12 per hour, in 2021 was $12.15 per hour, and in 2022 is $12.80 per hour.

42. Rise Services had a policy and practice of routinely requiring Coordinators like Plaintiff to work off the clock.

43. When accounting for the hours Plaintiff and the Coordinators are actually required to work, Plaintiff and the Coordinators' wages routinely fall below the minimum wage.

44. For example, Plaintiff's pay statement for the period of May 1, 2020 to May 15, 2020 indicates that she worked 88 hours and was paid a gross amount of $1,320.60 (not including a $20 "Cellular Stipend"). However, Plaintiff's hours do not account for work performed off the clock, including the 20 additional hours per week beyond her regularly

scheduled shifts in a typical week.  Taking into account the amount of time Plaintiff actually worked this pay period, Plaintiff worked 128 hours for $1,320.60 and was therefore paid $10.32 per hour, which is below the minimum wage.

45.     Similarly, Plaintiff's pay statement for the period of July 16, 2020 to July 31, 2020 indicates that she worked 92 hours and was paid gross wages in the amount of $1,380.60 (not including a $20 "Cellular Stipend").  However, Plaintiff's hours do not account for work performed off the clock, which in a typical week resulted in approximately 20 additional hours of work.  Taking into account the amount of time Plaintiff actually worked this pay period, including the 20 additional hours per week beyond her regularly scheduled shifts, Plaintiff worked approximately 132.00 hours for $1,380.60 and was therefore paid $10.46 per hour, which is below the minimum wage.

46.     These examples of Plaintiff's wages falling below the minimum wage are indicative of how she and the Coordinators were paid wages less than what is required by law.

### D.     Unpaid Compensation including Overtime and Incorrect Overtime Rate Calculation

47.     Plaintiff and the Coordinators routinely worked overtime by working more than 40 hours per week, but Rise Services failed to pay them all the overtime hours they earned and were due.

48.     Further, Rise Services would routinely incorrectly categorize the hours Plaintiff and the Coordinators worked resulting in them not being paid all the wages there were due.

49.     For example, Plaintiff's pay statement for the period of April 1, 2020 to April 15, 2020 indicates that she worked 126 hours of regular time and 0.00 hours of overtime. Because Plaintiff worked more than 40 hours per week in this pay period, she was entitled to overtime pay.  However, Rise Services failed to properly categorize the hours Plaintiff worked over 40 hours per week and thereby failed to properly pay her at her overtime rate for those hours.  Not even accounting for potential off the clock hours worked that are not

reflected on Plaintiff's pay statement, Plaintiff worked at minimum 38 hours beyond regularly scheduled shifts which should have been compensated as overtime at the appropriate overtime rate of time and a half, resulting in Plaintiff being owed an additional $285.00 for this pay period.

50.   Similarly, Plaintiff's pay statement for the period of March 1, 2020 to March 15, 2020 indicates that she worked 51.50 hours of regular time, 9.71 hours of overtime, and used 32.00 hours of vacation time.  However, Defendant incorrectly categorized her hours worked as vacation time and Plaintiff should have received overtime pay at a rate of time and a half for those hours.

51.   Plaintiff and the Coordinators were also routinely denied wages due under the Arizona Wage Statute.

52.   For example, Plaintiff and the Coordinators routinely worked unpaid hours for which they should have been compensated, and which many times caused Plaintiff and the Coordinators to work unpaid time including hours over 40 hours in a week resulting in numerous hours of unpaid overtime.

53.   As hourly, non-exempt employees, Plaintiff and other similarly situated Coordinators were promised an hourly rate by Defendant for all hours worked in each workweek, and those wages were timely due to Plaintiff and other similarly situated Coordinators pursuant to the Arizona Wage Statute.

54.   In addition, when Defendant did pay overtime, Defendant calculated their overtime rate based on their regular hourly rate without accounting for their other compensation like hazard pay, and holiday pay premiums.

55.   By failing to take into account their total compensation in calculating Plaintiff's and the Coordinators' overtime rate, including hazard pay and holiday pay, Defendant violated the FLSA.

56.   As hourly, non-exempt employees, Plaintiff and the other similarly situated Coordinators are or were entitled to overtime premiums for hours worked in excess of forty (40) each workweek.  Their overtime rate must be based on their regular rate of pay, which

must include their total compensation of their regular hourly rate, hazard pay and holiday pay premium.

57. For example, Plaintiff's pay statement for the period of January 1, 2020 to January 15, 2020 indicates that she worked 82.94 hours of regular time, 5.21 hours of overtime, and 5.00 hours of holiday time. Plaintiff was paid her regular hourly rate of $14.91 for her regular time and time and a half that regular hourly rate for overtime that was a paid at a rate of $22.37 per hour. However, Plaintiff also worked 5.00 hours of holiday time at a pay rate of $22.37 for a total of $111.83, which was not factored into her regular rate of pay resulting in the incorrect overtime rate.

58. Further, Defendant's failure to provide Plaintiff and the other Coordinators the promised hazard pay/essential employee hourly rate increase resulted in Plaintiff and the other Coordinators being underpaid both for their regular hours and unpaid for all their overtime hours worked at the correct pay rate.

59. Defendant's failure to pay the proper overtime rate or for all the overtime hours worked was not an isolated practice.

60. For example, Plaintiff's pay statement for the period July 16, 2020 to July 31, 2020 indicates that her regular rate was $15.00 per hour and she worked 92 hours of regular time and 0 hours of overtime during that pay period. However, the number of hours of overtime worked fails to account for the 20 hours of off the clock work Plaintiff worked during the typical week, causing her not to be paid all the overtime hours she worked.

61. In addition, Plaintiff's pay statements indicate that she was only paid overtime at time and a half her hourly rate. Rise Services never properly accounted for her total compensation, which includes hazard pay, and holiday pay premiums as required by the FLSA.

62. Defendant's policy and practice requiring Plaintiff and other similarly situated Coordinators to work off the clock, denied them both straight time, minimum wage, and overtime pay.

63.     The pay periods identified in this Complaint are indicative of how Plaintiff was typically paid in a manner that caused her not to receive minimum wage, overtime and regular wages she earned and was due under the FLSA, the Arizona Minimum Wage Statute, and the Arizona Wage Statute.

64.     Defendant failed to timely pay Plaintiff for all the wages she was due for work she performed, including regular wages, minimum wage, and overtime.

65.     In addition, when Plaintiff was paid overtime, Defendant failed to pay the correct overtime rate by factoring in her total compensation including hazard pay and holiday pay premiums for time worked on holidays.

66.     A significant part, if not all, of this unpaid straight time, minimum wage, and overtime work is evidenced in Defendant's own payroll, time-recording, and attendance records, most of which are exclusively in Defendant's own possession.

**III.   Rise Services' Compensation Policies And Practices Are Willful And Result In Violations Of The FLSA, The Arizona Minimum Wage Statute, And The Arizona Wage Statute**

67.     Defendant's policy and practice is to willfully deny its hourly, non-exempt Coordinators pay for all hours worked, including regular hours, minimum wage, and overtime worked beyond forty (40) in a workweek.

68.     Defendant applied and instituted the above-described willful and illegal policies and practices regarding not paying for all hours worked, failing to account for total compensation in the overtime rate, and failing to pay all wages due including the overtime and minimum wage, at all of Defendant's sites in Arizona.

69.     As a result of its policies, Defendant fails to pay straight time wages, minimum wage, and overtime to save payroll costs and taxes.  Defendant enjoys ill-gained profits at the expense of Plaintiff and other similarly situated Coordinators.

70.     In fact, an employee of Rise Services filed a complaint with the Arizona Industrial Commission Department of Labor in December 2021, complaining that Rise

Services had irregular pay periods and paid employees late in violation of the Arizona Wage Statute.

71.     Despite that complaint, Rise Services recklessly disregarded the law and continued to pay its Coordinators the wages they had earned and continued to reduce their wages below the amounts they were entitled to.

72.     During her employment, Plaintiff spoke with other Coordinators who worked at various locations in Arizona about Defendant's unlawful pay policies, learning that they also were subject to the same unlawful pay practices that she was experiencing.

73.     During her employment, Plaintiff complained to management about Rise Services unlawful pay practices on several occasions, including its failure to pay wages due resulting in unpaid wages, minimum wage, and overtime.

74.     Despite complaints about Defendant's wage violations, Defendant did not investigate the allegations and did not modify its unlawful pay practices, which Defendant willfully continues.

## COLLECTIVE ACTION ALLEGATIONS

75.     Plaintiff Lloyd brings Count I and II, the FLSA unpaid overtime and minimum wage claims, pursuant to 29 U.S.C. § 216(b) on behalf of herself and the following similarly situated employees of Defendant:

> All Coordinators who worked for Rise Services Inc. dba Rise Inc. in Arizona
>
> during the last three years ("Collective Action Members").

76.     Plaintiff, on behalf of herself and all other similarly situated Coordinators, seeks relief on a collective basis challenging Defendant's practice of failing to accurately record work time and pay its employees for all hours worked, including overtime, at the proper overtime rate and failing to pay them the minimum wage for all hours worked.  The number and identity of other individuals yet to opt-in and consent to join the collective action may be determined from Defendant's records and potential Collective Action Members may easily and quickly be notified of the pendency of this action.

77.     Plaintiff is similarly situated to the Collective Action Members because they are all subject to similar payroll policies and procedures.  Defendant requires the similarly situated Collective Action Members to work overtime but fails to pay them for all hours worked.  Defendant also fails to pay the similarly situated Collective Action Members the proper overtime rate, because their regular rate of pay fails to account for their total compensation including hazard pay and holiday pay.  Defendant also fails to pay the Collective Action Members the minimum wage for all hours worked.  The Collective Action Members are also similarly situated because they all utilize Defendant's time recording and reporting practices, which fail to accurately account and pay for all time worked including overtime and fails to account for overtime at the legally required rate.

78.     Defendant's overtime and minimum wage practices were routine and consistent.  Throughout the relevant time period over the past three years, the Collective Action Members regularly were not paid the proper minimum wage and overtime despite working in excess of forty hours per week.

79.     Plaintiff and the Collective Action Members performed the same or similar job duties.  Moreover, they regularly worked more than forty hours in a workweek. Accordingly, the employees victimized by Defendant's unlawful pattern and practices are similarly situated to Plaintiff in terms of employment and pay provisions.

80.     Defendant's failure to pay overtime and minimum wage compensation at the rates required by the FLSA result from generally applicable policies or practices and do not depend on the personal circumstances of the members of the collective action.  Thus, Plaintiff's experience is typical of the experience of the others employed by Defendant.

81.     The Collective Action Members, including Plaintiff, regardless of their precise job requirements or rates of pay, are entitled to overtime compensation for hours worked in excess of forty (40) and the minimum wage.  Although the issue of damages may be individual in character, there is no detraction from the common nucleus of facts pertaining to liability.

82.     Plaintiff will fairly and adequately protect the interests of the Collective Action Members and has retained counsel experienced and competent in the practice of wage and hour law and class action litigation.  Plaintiff has no interest that is contrary to or in conflict with the putative members of this collective action.

## CLASS ACTION ALLEGATIONS

83.     Plaintiff brings Count III and Count IV, the Arizona Minimum Wage Statute and Arizona Wage Statute claims, as a Rule 23 class action on behalf of herself and the following persons:

> All Coordinators who worked for Rise Services Inc. dba Rise Inc. in Arizona from May 27, 2019 to the present ("Arizona Class Members").

84.     Plaintiff's Rule 23 class claims (Count III and Count IV) satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

85.     Plaintiff's Rule 23 state law class claim (Count III and Count IV) satisfies the numerosity requirement of a class action.  The Arizona Class Members identified above are so numerous that joinder of all members is impracticable.  Although the precise number of potential class members is unknown, and the facts for calculating that number are presently within the sole control of Defendant, upon information and belief, there are a significant number of Arizona Class Members.

86.     Questions of law and fact common to the Arizona Class Members predominate over questions that may affect only individual members because Defendant has acted on grounds generally applicable to all Arizona Class Members.  Among the questions of law and fact common to Plaintiff and the Arizona Class Members are:

a.     whether Defendant employed the Arizona Class Members within the meaning of the Arizona Minimum Wage Statute and the Arizona Wage Statute;

b.     whether Defendant owes the Arizona Class Members wages in exchange for all work performed, including training time, hazard pay, overtime, and holiday pay;

c.      whether Defendant unlawfully failed to timely pay Arizona Class Members wages for all hours worked, including training time, hazard pay, and overtime;

d.      whether Defendant is liable for damages under the Arizona Wage Statute, including but not limited to compensatory damages, interest, and treble damages;

e.      whether Defendant unlawfully failed to pay Arizona Class Members the minimum wage; and

f.      whether Defendant is liable for damages under the Arizona Minimum Wage Statute.

87.    Plaintiff's claims under Arizona state law are typical of those of the Arizona Class Members in that class members have been employed in the same or similar positions as Plaintiff and were subject to the same or similar unlawful payroll practices as Plaintiff.

88.    The common questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

89.    A class action is appropriate for the fair and efficient adjudication of this controversy.  Defendant acted or refused to act on grounds generally applicable to the entire class.  The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of the class members to protect their interests.  The damages suffered by individual class members may be relatively small, and the expense and burden of individual litigation make it virtually impossible for the members of the class action to individually seek redress for the wrongs done to them.

90.    Plaintiff will fairly and adequately represent the interests of the Arizona Class Members and has retained counsel that is experienced and competent in the fields of wage and hour law and class action litigation.  Plaintiff has no interest that is contrary to or in conflict with those members of this class and collective action.

**COUNT I**
**COLLECTIVE ACTION FOR VIOLATION OF THE**
**FAIR LABOR STANDARDS ACT**
**(Failure to Properly Pay Overtime Wages and Record Keeping Violations - FLSA -**
**29 U.S.C. § 207 et seq.; Brought Against Defendant by Plaintiff Lloyd Individually**
**and on Behalf of the Collective Action Members)**

91.     Plaintiff, on behalf of herself and all Collective Action Members, reasserts the allegations set forth in the above paragraphs.

92.     Defendant paid Plaintiff and the Collective Action Members on an hourly basis, and they were and are all entitled to the overtime protections of the Fair Labor Standards Act as set forth in 29 U.S.C. §§ 201, et seq.

93.     At all relevant times, Defendant has been, and continues to be, subject to the minimum wage and overtime provisions of the FLSA because its employees are engaged in commerce and Defendant has annual revenues in excess of $500,000.

94.     Plaintiff and the Collective Action Members are non-exempt employees entitled to the statutorily mandated overtime pay according to the FLSA.

95.     Defendant was an employer pursuant to 29 U.S.C. § 203(d).

96.     Defendant failed to comply with 29 U.S.C. § 207 because Plaintiff and the Collective Action Members worked for Defendant in excess of forty hours per week, but Defendant failed to pay them for those excess hours at the statutorily required rate of one and one-half times their regular rate of pay as required by the FLSA.

97.     Plaintiff and other similarly situated Coordinators performed work causing them to work in excess of forty (40) hours in certain workweeks.

98.     This work was performed at Defendant's direction and/or with Defendant's knowledge.

99.     Defendant willfully violated the FLSA by failing to pay Plaintiff and the other Collective Action Members all wages due including overtime premiums for all hours accrued beyond forty (40) in a workweek.

100.    Defendant has acted neither in good faith nor with reasonable grounds to believe that that its actions and omissions complied with the FLSA.

101.   At all relevant times, Defendant willfully, regularly, and repeatedly failed, and continues to fail to make, keep, and preserve accurate time records required by the FLSA with respect to Plaintiff and the other similarly situated Coordinators, including records determining the wages and hours of employment pertaining to Plaintiff and the similarly situated Coordinators.

102.   As a result of the willful violations of the FLSA's overtime pay provisions, Defendant has unlawfully withheld overtime wages from Plaintiff and Collective Action Members.  Accordingly, Defendant is liable to Plaintiff and the Collective Action Members for unpaid wages including overtime compensation, an additional equal amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Plaintiff and all similarly situated employees demand judgment against Defendant, and pray this Court:

a.   Certify the claim set forth in Count I above as a collective action pursuant to Section 216(b) of the FLSA and issue notice to all similarly-situated hourly, non-exempt Coordinators, who worked for Defendant during the last three years in Arizona, informing them of their right to file consents to join the FLSA portion of this action;

b.   Designate Plaintiff Lloyd as the Representative Plaintiff of the Collective Action and undersigned counsel as the attorneys representing the Collective Action Members;

c.   Award Plaintiff and all similarly situated employees compensatory and liquidated damages under 29 U.S.C. § 216(b);

d.   Award Plaintiff and all similarly situated employees prejudgment and post-judgment interest as provided by law;

e.   Award Plaintiff and all similarly situated employees attorneys' fees and costs as allowed by Section 216(b) of the FLSA, including that

Defendant is financially responsible for notifying the Collective Action Members of Defendant's alleged wage and hour violations; and

f.     Award Plaintiff and all similarly situated employees such other relief as this Court deems fair and equitable, including injunctive relief.

**COUNT II**
**COLLECTIVE ACTION FOR VIOLATION OF THE**
**FAIR LABOR STANDARDS ACT**
**(Failure to Properly Pay Minimum Wage and Record Keeping Violation – FLSA – 29 U.S.C. § 206 *et seq.*; Brought Against Defendant by Plaintiff Lloyd Individually and on Behalf of the Collective Action Members)**

103.    Plaintiff, on behalf of herself and the Collective Action Members, reasserts the allegations set forth in the above paragraphs.

104.    Defendant paid Plaintiff and the Collective Action Members on an hourly basis, and they are and were all entitled to the minimum wage protections of the FLSA as set forth in 29 U.S.C. §§ 201, *et seq*.

105.    At all relevant times, Defendant has been, and continues to be, subject to the minimum wage and overtime provisions of the FLSA because its employees are engaged in interstate commerce and Defendant has annual revenues in excess of $500,000.

106.    Plaintiff and the Collective Action Members are non-exempt employees entitled to the statutorily mandated minimum wage.

107.    Defendant was an employer pursuant to 29 U.S.C. § 203(d).

108.    Defendant failed to comply with 29 U.S.C. § 206 because Defendant failed to pay Collective Action Members the minimum wage as required by the FLSA.

109.    The work was performed at Defendant's direction and/or with Defendant's knowledge.

110.    Defendant willfully violated the FLSA by failing to pay Plaintiff and the other Collective Action Members all the minimum wage due.

111.    Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions complied with the FLSA.

112.     As a result of the aforesaid willful violations of the FLSA's minimum wage pay provisions, Defendant has unlawfully withheld minimum wages from Plaintiff and the Collective Action Members.  Accordingly, Defendant is liable to Plaintiff and the Collective Action Members for unpaid wages including minimum wage compensation, an additional equal amount in liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Plaintiff and all similarly situated employees demand judgment against Defendant, and pray this Court:

  a. Certify the claim set forth in Count II above as a collective action pursuant to Section 216(b) of the FLSA and issue notice to all similarly-situated hourly employees, regardless of actual title, who worked for Defendant as Coordinators in Arizona during the last three years, informing them of their right to file consents to join the FLSA portion of this action;

  b. Designate Plaintiff Lloyd as the Representative Plaintiff of the Collective Action and undersigned counsel as the attorneys representing the Collective Action Members;

  c. Award Plaintiff and all similarly situated employees compensatory and liquidated damages under 29 U.S.C. § 216(b);

  d. Award Plaintiff and all similarly situated employees prejudgment and post-judgment interest as provided by law;

  e. Award Plaintiff and all similarly situated employees attorneys' fees and costs as allowed by Section 216(b) of the FLSA, including that Defendant is financially responsible for notifying the Collective Action Members of Defendant's alleged wage and hour violations; and

  f. Award Plaintiff and all similarly situated employees such other relief as this Court deems fair and equitable, including injunctive relief.

**<ins>COUNT III</ins>**
**FED.R.CIV.P. 23 CLASS ACTION FOR VIOLATION OF THE**
**ARIZONA MINIMUM WAGE STATUTE**
**(Failure to Pay Minimum Wage, A.R.S. § 23-362 *et seq.*; Brought Against Defendant**
**by Plaintiff Lloyd Individually and on Behalf of the Arizona Class Members)**

113.   Plaintiff, on behalf of herself and the Arizona Class Members, reasserts the allegations set forth in the above paragraphs.

114.   At all material times hereto, Plaintiff and the Arizona Class Members were employed by Defendant within the State of Arizona and have been entitled to the rights, protections, and benefits provided under the Arizona Minimum Wage Statute.

115.   Plaintiff and the similarly situated employees were entitled to the minimum wage as defined by A.R.S. § 23-363.

116.   Defendant was an employer pursuant to A.R.S. § 23-362(B).

117.   Defendant is aware that, under A.R.S. § 23-363, it was obligated to pay minimum wage due to Plaintiff and the Arizona Class Members.

118.   Defendant failed to pay Plaintiff and the Arizona Class Members minimum wage due without a good faith basis for withholding wages.

119.   Defendant has willfully failed and refused to pay minimum wage due to Plaintiff and the Arizona Class Members. As a result of Defendant's unlawful acts, Plaintiff and the Arizona Class Members are entitled to the statutory remedies pursuant to A.R.S. § 23-364, including the balance of wages owed, interest thereon, an additional amount equal to twice the underpaid wages, and attorneys' fees and costs.

120.   The state law claim, if certified for class-wide treatment, may be pursued by all similarly situated persons who do not opt out of the Class.

WHEREFORE, Plaintiff and all similarly situated employees demand judgment against Defendant and pray this Court:

a.   Certify the state law claim set forth in Count III above as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b.     Designate Plaintiff Lloyd as the Class Representative of the Arizona Class Members and undersigned counsel as the attorneys representing the Arizona Class Members;

c.     Award Plaintiff and all similarly situated employees compensatory damages and statutory damages, plus costs and attorneys' fees, and all available remedies pursuant to A.R.S. § 23-364;

d.     Award Plaintiff and all similarly situated employees prejudgment and post-judgment interest as provided by law; and

e.     Award Plaintiff and all similarly situated employees such other relief as this Court deems fair and equitable, including injunctive relief.

<u>COUNT IV</u>
**FED.R.CIV.P. 23 CLASS ACTION FOR VIOLATION OF THE ARIZONA WAGE STATUTE**
**(Failure to Timely Pay Wages Due, A.R.S. § 23-350 *et seq.*; Brought Against Defendant by Plaintiff Lloyd Individually and on Behalf of the Arizona Class Members)**

121.     Plaintiff, on behalf of herself and the Arizona Class Members, reasserts the allegations set forth in the above paragraphs.

122.     At all material times hereto, Plaintiff and the Arizona Class Members were employed by Defendant within the State of Arizona and have been entitled to the rights, protections, and benefits provided under the Arizona Wage Statute.

123.     Defendant was aware of its obligation to pay timely wages pursuant to A.R.S. § 23-351.

124.     Defendant is aware that, under A.R.S. §§ 23-351-353, it was obligated to timely pay all wages due to Plaintiff and the Arizona Class Members, including regular wages and overtime.

125.     Defendant failed to timely pay Plaintiff and the Arizona Class Members wages she was due without a good faith basis for withholding wages.

126.     Defendant has willfully failed and refused to timely pay wages due to Plaintiff and the Arizona Class Members. As a result of Defendant's unlawful acts, Plaintiff and the

1    Arizona Class Members are entitled to the statutory remedies provided pursuant to A.R.S.

2    § 23-355.

3         127.    The state law claim, if certified for class-wide treatment, may be pursued by

4    all similarly situated persons who do not opt out of the Class.

5         WHEREFORE, Plaintiff and all similarly situated employees demand judgment

6    against Defendant and pray this Court:

7              a.    Certify the state law claim set forth in Count IV above as a class action

8                    pursuant to Rule 23 of the Federal Rules of Civil Procedure;

9              b.    Designate Plaintiff Lloyd as the Class Representative of the Arizona

10                   Class Members and undersigned counsel as the attorneys representing

11                   the Arizona Class Members;

12             c.    Award Plaintiff and all similarly situated employees compensatory

13                   damages and treble damages, plus costs and attorneys' fees, and all

14                   available remedies pursuant to A.R.S. § 23-350 *et seq.*;

15             d.    Award Plaintiff and all similarly situated employees prejudgment and

16                   post-judgment interest as provided by law; and

17             e.    Award Plaintiff and all similarly situated employees such other relief

18                   as this Court deems fair and equitable, including injunctive relief.

19                          **<u>DEMAND FOR JURY TRIAL</u>**

20       Plaintiff hereby demands a jury trial on all claims with respect to which she may

21   have the right to a jury.

22       DATED:  May 27, 2022

23                                    **YEN PILCH ROBAINA & KRESIN PLC**

24                                    By ___*/s/ Ty D. Frankel*_____
                                     Ty D. Frankel
25                                    6017 N. 15th Street
                                     Phoenix, Arizona 85014
26                                    Telephone: (602) 682-6450
                                     Facsimile: (602) 682-6455
27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**YEN PILCH ROBAINA & KRESIN PLC**
Patricia N. Syverson
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
Telephone: (619) 756-7748

Attorneys for Plaintiff